UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jessica FIGUEROA, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 14–7734 (KM) <br><br> OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Jessica Figueroa brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Ms. Figueroa has been diagnosed with a Lisfranc fracture to her left foot, for which she has undergone multiple surgeries, and with possible early reflex sympathetic dystrophy. (*See, e.g.*, R. 26, 206[1] (ECF. No. 5)). Ms. Figueroa alleges that she suffers from constant extreme pain and swelling in the foot, as well as drowsiness from pain medication, which leaves her unable to work. (*See, e.g.*, R. 29–31).

For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

---

[1] "R. _" refers to the pages of the administrative record filed by the Commissioner as part of her answer. (ECF No. 5)

1

## I. BACKGROUND

Ms. Figueroa seeks to reverse an ALJ's finding that she was not disabled from June 2010, the alleged onset date,[2] through December 31, 2012, her date last insured. (R. 10–18)

Ms. Figueroa most recently worked as a dispatcher until she was laid off in 2008. (R. 34–35) Before then she worked as a receptionist until 2007 and as a machine operator in a factory. (R. 36)

In June 2010, Ms. Figueroa twisted her foot and fell, sustaining dislocations and a fracture to the tarsal and metatarsal bones of her left foot. (*E.g.*, R. 204) After surgery at the Raritan Bay Medical Center, she experienced severe pain. (*Id.*) She underwent a second operation in June 2011, which initially appeared successful. (R. 225, 275, 289) By November 2011, however, she again complained of pain during her monthly visits to her podiatrist, Dr. Fausto J. Ramos. (R. 276–81) Ms. Figueroa adds that she underwent a third surgery in February 2013, ten days before the ALJ issued his decision. (Pl. Br. 23 & n.2 (ECF No. 9); *see also* R. 291 (pre-op testing orders))

Ms. Figueroa initially applied for DIB and SSI benefits on December 10, 2010. (*E.g.*, R. 48, 57) Those claims were first denied on February 3, 2011 (R. 56, 65), and denied again on reconsideration on October 5, 2011 (R. 76, 87). On October 13, 2011, Ms. Figueroa filed a request for a hearing. (R. 104–06) On July 24, 2012, the ALJ held a hearing, at which Ms. Figueroa testified and was represented by counsel. (R. 21–47) On February 22, 2013, ALJ Joel H. Friedman denied Ms. Figueroa's application for DIB and SSI benefits. (R. 10–18) On October 9, 2014, the Appeals Council denied Ms. Figueroa's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1–4) Ms. Figueroa now appeals that decision.

---

[2] Ms. Figueroa's applications listed her onset date as December 8, 2010 (R. 137, 141), but her attorney amended that date at the hearing (R. 10, 24).

## II. DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d

4

at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

## B. The ALJ's decision

ALJ Friedman determined that Ms. Figueroa's date last insured (*see* https://secure.ssa.gov/poms.nsf/lnx/0425501320) was December 31, 2012, and that the alleged disability onset date was in June 2010. (R. 12) The ALJ ultimately concluded, however, that from June 2010 through December 31,

2012, Ms. Figueroa was not "under a disability, as defined in the Social Security Act." (R. 16) The ALJ's determinations may be summarized as follows.

### 1. Step 1

At step one, the ALJ determined that Ms. Figueroa had "not engaged in substantial gainful activity since June 2010." (R. 12)

### 2. Step 2

At step two, the ALJ found that Ms. Figueroa had the following severe impairment: "status post fractured foot." (R. 12) He added that the medical record supports the finding that Ms. Figueroa's impairments significantly limit her ability to do at least one basic work activity, and that her impairments have been continuously severe for more than twelve months. (R. 12–13)

### 3. Step 3

At step three, the ALJ determined that Ms. Figueroa's impairment or combinations of impairments did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A (specifically § 1.00 musculoskeletal system impairments). (R. 13)

### 4. Step 4 - RFC

The ALJ then determined Ms. Figueroa's RFC, finding her capable of performing the following:

> the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can never climb ladders, ropes and scaffolds, never kneel, crouch, or crawl, but can occasionally climb ramps and stairs, balance and stoop. She needs to avoid concentrated exposure to temperature extremes, wetness and hazards and all exposure to humidity and vibration.

(R. 13)

The ALJ supported his RFC determination by finding that Ms. Figueroa's allegations concerning the intensity of her symptoms and the extent to which they are limiting were "not entirely credible." (*Id.*; *accord* R. 16) The ALJ listed

6

the details of her medical record, including Ms. Figueroa's injury, the ensuing operation, examinations from doctors and podiatrists, second surgery, treatments and tests, treating physician reports, and state agency physician reports. (R. 14–15) Among other things, he described her injury, surgery, and resultant pain. (R. 14 (citing R. 204)) He also included observations of two treating podiatrists: The first, Dr. Ujjwal K. Datta, opined in January 2011 that Ms. Figueroa's ability to do work related activities was limited to sitting for less than six hours per day. (*Id.* (citing R. 207)) The second, Dr. Ramos, stated in May 2011 that Ms. Figueroa had walking and standing, as well as lifting and carrying, limitations, but was not limited in her ability to sit. (*Id.* (citing R. 217)) The ALJ also noted that Dr. Ramos's medical records indicate that the second surgery was successful, but that Ms. Figueroa did not attend prescribed physical therapy. (R. 15 (citing R. 275–76)) Additionally, the ALJ explained that Dr. Ramos's records further show that Ms. Figueroa "took a small jump and heard a click on the left big toe" after which she could not walk on that toe, and that subsequent injections did not alleviate the pain. (*Id.* (citing 278–80))

The ALJ recounted Ms. Figueroa's testimony at her hearing. He observed that Ms. Figueroa presented with a slight limp and had no difficulty rising for her oath. (R. 15) He recited that she explained her pain, discomfort, and swelling when sitting down. (*Id.*; *see* R.30) She also explained that her pain medication, Naprosyn, makes her drowsy. (*Id.*; *see* R.31) The ALJ recalled that he asked Ms. Figueroa why she does not take more potent pain medication, and she answered "that the doctor tells her that Naprosyn is for muscle inflammation and that is why he is giving it to her." (*Id.*; *see* R. 31) The ALJ further noted that Dr. Ramos opined in the RFC form submitted after the hearing that Ms. Figueroa's ability to sit was not affected by her impairment. (*Id.* (citing R. 294))

Based on this evidence, the ALJ found that Ms. Figueroa was not fully credible. (R. 16) Against Ms. Figueroa's claims of a minimal ability to sit or stand, the ALJ cited Dr. Ramos's opinion that Ms. Figueroa had no sitting

7

limitations (*see, e.g.*, R. 294); her minimal medication regimen and failure to seek stronger medication; and her admission that she could stand for 20–25 minutes at a time (*see* R. 40), which the ALJ found consistent with sedentary work. (R. 16) The ALJ also found it relevant that Ms. Figueroa does not use assistive devices (*see* R. 39–40), does household chores, shops with the assistance of a neighbor, and is able to care for her children. (R. 16)

The ALJ also gave limited weight to the opinions of two of Ms. Figueroa's physicians. (R. 16) The ALJ noted that Dr. Datta, who opined that Ms. Figueroa was disabled, was doing so with an eye towards state welfare, not social security, standards. (*Id.*) In fact, in the same report, Dr. Datta suggested that Ms. Figueroa might be able to perform a desk job. (*Id.*; *see* R. 212–13) The ALJ similarly gave "little weight" to Dr. Ramos's opinion of Ms. Figueroa's physical limitations. (R. 16) Dr. Ramos opined that Ms. Figueroa was limited to lifting and carrying five pounds, but the ALJ found that there was "no impairment documented that would impose such a draconian limitation." (*Id.*; *see* R. 293) Dr. Ramos also stated that Ms. Figueroa could never climb, stoop, crouch, kneel or crawl. (*Id.*; *see* R. 294) The ALJ found that those opinions were unsupported by the record and inconsistent with Ms. Figueroa's current daily activities, which consist of household chores and child care. (*Id.*) The ALJ also found that Dr. Ramos gave little supporting explanation for his opinions. (*Id.* (citing 20 C.F.R. §§ 404.1527 (d)(3), 416.927(d)(3)))

Based on that analysis of the evidence, the ALJ gave far more weight to the state agency physicians' assessment that Ms. Figueroa could perform sedentary work with limitations. (R. 17; *see, e.g.*, R. 52–56)

Thus, the ALJ found that, based on her RFC, Ms. Figueroa was unable to perform any past relevant work. (R. 17)[3] The ALJ further determined that, since Ms. Figueroa was born on February 2, 1982, and was 28 years old, she was

---

[3] The ALJ explained that she may not have performed her past sedentary jobs at the substantial gainful activity level. (*Id.*)

categorized as a "younger individual age 18-49, on the alleged disability onset date." (*Id.*) The ALJ also noted that Ms. Figueroa had a limited education and was able to communicate in English. (*Id.*) The ALJ added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.* (citing SSR 82–41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2))

### 5. Step 5

At step five, the ALJ considered Ms. Figueroa's "age, education, work experience, and residual functional capacity," and found that "there are jobs that exist in significant numbers in the national economy that [Ms. Figueroa] can performed." (R. 17) The ALJ explained that "[i]f the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.24." (R. 17) He added that Ms. Figueroa's postural and environmental limitations "do not significantly erode the sedentary occupational base, as noted in SSR 96-9p." (*Id.*) Thus the ALJ determined that Ms. Figueroa was not "under a disability" during the relevant period, and Ms. Figueroa was denied disability benefits and supplemental security income. (R. 18)

### C. Ms. Figueroa's appeal

Ms. Figueroa challenges the ALJ's determinations at steps three, four, and five. At step three, Ms. Figueroa argues that the ALJ's "one-sentence … statement which doesn't even identify which listing was consulted for a comparison" was insufficient, and thus cannot be properly reviewed by this Court. (Pl. Br. 16; *accord* Pl. Br. 11–18) At step four, Ms. Figueroa argues that the ALJ does not properly support his decision with evidence from the record, and that the ALJ improperly rejects treating opinions in favor of state agency physician review. (Pl. Br. 18–25, 32–34) At step five, Ms. Figueroa argues that

the ALJ improperly substituted his own judgment for that of a vocational expert. (Pl. Br. 25–32)

### D. Analysis

#### 1. Step 3

The claimant bears the burden of proving that her impairments, whether individually or collectively, equal or meet those listed in Appendix 1. *Burnett*, 220 F.3d at 120 n.2. However, "if a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151 (3d Cir. 2008) (not precedential) (citing 20 C.F.R. § 404.1526(b)). The Third Circuit has stated that step three requires the ALJ to perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 120. "Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504. The ALJ is "not require[d] ... to use particular language or adhere to a particular format in conducting his analysis. Rather ... sufficient development of the record and explanation of findings to permit meaningful review" is necessary. *Jones*, 364 F.3d at 505.

In Ms. Figueroa's case, the ALJ's explicit step three analysis is limited to this:

> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> Although the claimant has impairments that are considered to be "severe," they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments under 1.00 (Musculoskeletal System).

10

(R. 13)

That analysis is skimpy. I do find, however, that it permits meaningful review, for two reasons: (1) Even now, Ms. Figueroa does not point to any evidence even suggesting that her impairment might meet or equal one of those listed in Appendix 1. (2) The ALJ identified "1.00 (Musculoskeletal System)" as the relevant category of impairments, and the evidence as a whole well supports his finding that the impairments, singly or in combination, do not match or meet criteria within § 1.00. *Cf. Sentz v. Barnhart*, 83 F. App'x 410 (3d Cir. 2003) ("despite the inadequate explanation by the ALJ, meaningful judicial review of the ALJ's analysis at step three is possible because of the nature of [petitioner]'s back impairment, the singular listing at issue and the type of medical evidence necessary to establish this presumptively disabling condition") (not precedential). It is important to remember that the Appendix A listings set a purposefully high bar, because meeting all of the requirements results in an automatic finding of disability. Meeting only some of the requirements is insufficient. *See Sullivan v. Zebley*, 493 U.S. 521, 530–32, 110 S. Ct. 885, 891–92 (1990).

Ms. Figueroa briefly mentions §§ 1.03 and 1.06, suggesting that her impairments meet or are equivalent to them. (Pl. Br. 16) Both, however, require "an inability to ambulate effectively, as defined in 1.00.B2b."[4] 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Ms. Figueroa's evidence fails to meet that definition.

---

[4] 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

...

1.06 Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:

A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;

and

11

An inability to ambulate effectively "is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.00.B.2.b. Further:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*

To be sure, the ALJ performed his most detailed analysis of the evidence in connection with the RFC. That evidence, however, sheds light on Ms. Figueroa's Step 3 claims. The ALJ noted that Ms. Figueroa testified that "[s]he does not use any assistive devices." (R. 16; *see* R. 39) She claimed that she can stand for 20–25 minutes at a time but stated that she spends her day doing chores such as laundry and cleaning. (R. 16; *see* R. 37, 40) The ALJ cited medical evidence that the second surgery appeared to correct Ms. Figueroa's injuries (R. 14–15 (citing R. 270–71, 275)); that Ms. Figueroa did not attend physical therapy or follow up with her doctor, but instead went away (R. 15, (citing R. 276)); and that Dr. Ramos reported that Ms. Figueroa could stand

---

> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

and walk for a total of two hours a day (*Id.* (citing R. 294)). The ALJ noted only a slight limp when Ms. Figueroa appeared for the hearing. (R. 15; *see* R. 40)[5]

These findings by the ALJ well exceed the threshold of substantial evidence to support the conclusion that Ms. Figueroa's impairment did not meet or equal any of the relevant impairments listed in § 1.00. Ms. Figueroa admittedly does not use any assistive device. *See* § 1.00.B.2.b. Both she and her treating physician think she can walk for some amount of time unaided, and medical evidence supports that. *Id.* She can do chores and clean her house, activities which do not alone establish effective ambulation, § 1.00.B.2.b., but which combined with the other evidence demonstrate that Ms. Figueroa can ambulate effectively as defined by § 1.00.B.2.b., and therefore does not have an impairment that meets or equals the criteria of § 1.03 or § 1.06.

### 2. Step 4

#### i. RFC

Ms. Figueroa argues that the ALJ did not properly explain his RFC decision. (Pl. Br. 18–25) She cites *Burnett* for the proposition that "[i]n making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." 220 F.3d at 121 (internal citations omitted).

RFC is an assessment of the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545. The ALJ found that Ms. Figueroa had the RFC to perform "the full range of sedentary work as defined in 20 CFR

---

[5] At the hearing the ALJ noted that Ms. Figueroa "didn't have much of a limp," and asked her whether it gets worse when she walks more. Ms. Figueroa answered "yes." (R. 40)

13

404.1567(a) and 416.967(a)" with some exceptions and environmental limitations. (R. 13; see section II.B.4., *supra*) I find that the ALJ sufficiently analyzed the evidence in the record and explained his RFC findings, which are supported by substantial evidence.

The ALJ explicitly considered medical records from hospital admissions and four physicians, the RFC form submitted by Dr. Ramos, the state agency physicians' review of Ms. Figueroa's medical records, and her testimony. (R. 14–16) Based on that record he found Ms. Figueroa "not fully credible," especially her claim of a "very minimal ability to sit or stand" (R.16) The ALJ then supported that finding with substantial evidence, including that even she admitted to the ability to stand for 20–25 minutes (*see* R. 40), her treating physician, Dr. Ramos, indicated no limitations in sitting (*see* R. 217 ), and she has not sought anything stronger than the weak medication that she currently takes (*see* R. 31–32). (*Id.*) He also discounted certain findings of Ms. Figueroa's various treating physicians because they were made right after surgery or they were made with no explanation or documentation. (*Id.*; see Section II.D.3., *infra*)

Much of the record supports Ms. Figueroa's ability to do sedentary work, and the little evidence that suggests otherwise is poorly supported. In sum, the record as a whole supports the ALJ's conclusion as to Ms. Figueroa's RFC and adequately explains how the ALJ made his determination. The RFC finding is thus supported by substantial evidence.

    ii.   *Evaluating the Opinion of the Treating Physician*

Ms. Figueroa challenges the ALJ's alleged rejection of the opinions of the treating physicians in favor of the opinions of the state agency physicians who reviewed her file. (Pl. Br. 32–34)

In general, the opinion of a medical professional who has treated the claimant is entitled to deference. 20 CFR § 404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources, since these sources are

14

likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)..."); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." (internal quotation marks omitted)). The Third Circuit has held that unless there is contradictory medical evidence in the record, an ALJ may not reject a treating physician's opinion. *See Brownawell v. Comm'r of Soc. Sec*, 554 F.3d 352, 355 (3d Cir. 2008). Further, an ALJ's unsupported judgment, speculation, or lay opinion is not sufficient to outweigh a treating physician's opinion. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *see also Plummer*, 186 F.3d at 429 ("an ALJ may not make speculative inferences from medical reports.").

But the opinion of a treating source must be given "controlling weight" only when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 CFR § 404.1527(c)(2). Although "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded more or less weight depending on the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (internal citation omitted). Further, "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011). Rather, "[s]tate agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

The ALJ's decision to give "little weight" to certain findings of the treating physicians was supported by substantial evidence. (R. 16) The ALJ discounted the opinion of Dr. Datta because it was tied to welfare eligibility, and because Datta's report suggested that Ms. Figueroa might be able to perform a desk job. (*Id.*; *see* R. 213) The ALJ discounted some of Dr. Ramos's RFC opinions

15

because they had no supporting explanations or documentation and were not supported by other medical records. (*Id.*; *see* R. 293–96) The ALJ also found the limitations described by Dr. Ramos to be inconsistent with Ms. Figueroa's own descriptions of her daily activities, which include taking care of her children, doing chores, cleaning, and laundry. (*Id.*; *see* R. 37–39) Finally, the ALJ concluded that the state agency physicians' assessment of her file was consistent with the credible medical evidence, and thus entitled to great weight. (R. 17)

### 3. Step 5

Ms. Figueroa argues that the ALJ failed to support his step five determination with evidence from a vocational expert. (Pl. Br. 25–32) More specifically, she argues that the ALJ purposefully found non-exertional limitations that would allow him to rely on SSR 96–9p in order to avoid the use of a vocational expert. (Pl. Br. 31) To a great extent, this argument rests on Ms. Figueroa's attack on the RFC finding, a contention I have already denied. I hold that, since the ALJ's RFC findings were supported by substantial evidence, his reliance on SSR 96–9p as additional evidence was permissible as well.

At step five, the Commissioner bears the burden of showing that the claimant can perform work which exists in the national economy, in light of her age, education, work experience, and RFC. 20 C.F.R. § 404.1520(a)(4)(v). That analysis may depend on whether the claimant has only exertional limitations, or has non-exertional limitations. Exertional limitations are impairment-caused limitations that affect a claimant's ability to meet the strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* 20 C.F.R. § 404.1569a(b); SSR 96–9p. Non-exertional limitations are impairment-caused limitations that affect a claimant's ability to meet the other demands of a job, including mental capabilities; vision and hearing; postural functions such as climbing, balancing, stooping, kneeling, crouching, crawling, reaching,

handling, fingering, and feeling; and environmental restrictions. *See* 20 C.F.R. § 404.1569a(c)(1)(i–vi); SSR 96–9p.

Where a claimant has only exertional limitations, the Commissioner may use the Medical-Vocational Rules to determine whether such work exists. The Medical-Vocational Rules set forth tables, or grids, with various combinations of age, education, work experience and RFC, and direct a finding of disabled or not disabled for each combination. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. An ALJ "may rely on these grids to establish that jobs exist in the national economy that a person with the claimant's exertional limitations could perform." *Sykes*, 228 F.3d at 263 (3d Cir. 2000). However, this applies only to exertional limitations; where the claimant has non-exertional limitations, the grids provide only a framework, and the ALJ must consider additional evidence to determine whether there are jobs in the national economy that someone with the claimant's combination of impairments could perform. *Id.* at 270; *see also Allen v. Barnhart*, 417 F.3d 396, 404 (3d Cir. 2005).

Where a claimant has non-exertional impairments, an ALJ is permitted to rely on Social Security Rulings ("SSR") as the additional evidence required under *Sykes v. Apfel*; such SSRs may be a permissible substitute for the testimony of a vocational expert. *See Allen*, 417 F.3d at 406 ("While, surely, the Agency can use its rules as a substitute for individualized determination, nonetheless, there must be a "fit" between the facts of a given case, namely, the specific non-exertional impairments, and the way in which the Rule dictates that such non-exertional limitations impact the base."). But "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work," and the ALJ must discuss this. *Id.*, at 407.

Here the ALJ cited to SSR 96–9p as additional evidence supporting the grid recommendation. (R. 17) SSR 96–9p specifically says that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually

17

erode the occupational base for a full range of unskilled sedentary work significantly." SSR 96–9p. It also says that an ability to stoop and balance occasionally is required for most unskilled sedentary occupations. *Id.* For environmental restrictions "few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards." SSR 96–9p.

The ALJ specifically found that Dr. Ramos's assertion that Ms. Figueroa could not stoop was not credible, and was inconsistent with her own description of her daily activities. (R. 16) Even Dr. Ramos felt that Ms. Figueroa occasionally can balance, and the ALJ also accepted his finding as to temperature extremes. (R. 15) Thus the ALJ properly relied on SSR 96-9p as additional evidence for using the grid as a framework in conducting step five for a claimant with exertional and non-exertional limitations under *Allen.*

## III. CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED.

Dated: February 1, 2016

_____
**KEVIN MCNULTY**
**United States District Judge**